UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ROYNELL J. WILLIAMS                    CIVIL ACTION


VERSUS                                 NO: 00-1288


JAMES G. ROCHE, SECRETARY OF           SECTION: "R"(3)
THE AIR FORCE

**ORDER AND REASONS**

     Before the Court are the parties' cross motions for summary
judgment based on the administrative record in this matter.  For
the following reasons, the Court GRANTS defendant James G.
Roche's motion for summary judgment and DENIES plaintiff Roynell
J. Williams' motion for summary judgment.


**I.   BACKGROUND**

     Plaintiff Roynell J. Williams held a dual-status position
with the United States Air Force at the Naval Station/Joint
Reserve Base in New Orleans, Louisiana.  He was an Air Reserve
Technician and a reservist in the Air Force with a rank of
Technical Sergeant.  Plaintiff challenges his discharge from his
civilian position with the Air Force and from his military
position in the Air Force Reserves.

     On January 12, 1997, plaintiff underwent a urinalysis test
that tested positive for cocaine.  The test was administered

while he was in military status.  As a result, plaintiff was
notified that the Air Force had initiated separation proceedings
to remove him from his military position in the Air Force
Reserves.  In addition, because of his drug use, the Air Force
began proceedings to remove plaintiff from his civilian position.
In December of 1997, the Air Force removed plaintiff from his
civilian position.  In January 1998, an administrative discharge
board found that plaintiff committed misconduct as a result of
his cocaine use and that he should be discharged from his
military position in the Air Force Reserve.  In March of 1998,
the board ordered plaintiff's discharge from the Air Force
Reserves.

        Following the loss of his civilian and military positions,
plaintiff set out on two tracks to rectify the adverse actions
taken against him.  To remedy the loss of his civilian position,
plaintiff filed an appeal of his removal with the Merit Systems
Protection Board (MSPB).  On appeal, plaintiff asserted that the
Air Force failed to prove by a preponderance of the evidence that
he used cocaine and that the Air Force's decision to terminate
him was in retaliation for his filing an earlier Equal Employment
Opportunity Commission complaint.  The Air Force filed a motion
in limine to preclude the MSPB from relitigating the issue of
whether plaintiff used cocaine because the issue had been fully
litigated before the administrative discharge board on the
military side.  The MSPB administrative law judge granted the
agency's motion.  The MSPB ALJ then issued an initial decision to

sustain the Air Force's decision and to uphold plaintiff's removal.  The MSPB ALJ found that the agency sufficiently demonstrated that plaintiff used cocaine and that plaintiff's discrimination claim was without merit because the agency had a legitimate reason to remove plaintiff that outweighed any motive to retaliate against plaintiff for his earlier filing of an EEOC complaint.  The MSPB denied plaintiff's petition for review and issued a final order affirming its earlier decision to uphold plaintiff's removal.  Plaintiff then filed an appeal of the MSPB's discrimination decision to the Equal Employment Opportunity Commission (EEOC).  The EEOC concurred with the decision of the MSPB on March 30, 2000.

On a second front, in an attempt to rectify his military discharge, plaintiff filed an application to correct his record with the Air Force Board for Correction of Military Records (AFBCMR) on April 16, 2000.  Plaintiff sought to set aside the results of the administrative discharge board based on alleged procedural and constitutional violations.

On April 28, 2000, plaintiff filed a lawsuit in this Court in which he challenged his civilian discharge as discriminatory under Title VII, 42 U.S.C. § 2000e-5, and he alleged that his military discharge violated the Administrative Procedures Act (APA), 5 U.S.C. § 702.  Defendant moved to dismiss plaintiff's Title VII claim and to stay the proceedings as to plaintiff's APA claim pending the outcome of plaintiff's appeal before the AFBCMR.  On October 12, 2000, this Court granted defendant's

motion to dismiss plaintiff's Title VII claim.  In addition, the
Court stayed the rest of the case pending the decision of the
AFBCMR.

On January 31, 2001, the AFBCMR denied plaintiff's
application for review.  In response, plaintiff filed an amended
complaint in this Court.  Plaintiff sought review of the MSPB
decision on his civilian discharge under 5 U.S.C. § 7703 and
dropped the now-dismissed Title VII claim.  Plaintiff also
challenged the AFBCMR decision on his military discharge.  In
response, defendant filed a motion to dismiss plaintiff's
challenge of the MSPB decision for lack of subject matter
jurisdiction, or in the alternative, to transfer the Section 7703
claims to the Court of Appeals for the Federal Circuit.  On July
16, 2002, this Court denied defendant's motion to dismiss, or, in
the alternative, to transfer.  *See Williams v. Roche*, 2002 WL
1585568 (E.D. La. July 16, 2002).

The defendant was then ordered to produce an administrative
record for this case, which it subsequently did on December 31,
2002.  The administrative record included a letter from Lt. Col.
James Swaby dated October 15, 1997, explaining that Dr. Vincent
Papa, who both testified as an expert witness at the
administrative discharge board hearing and filed an affidavit
concerning the laboratory procedures used in this case,
previously had been removed from his position as chief of the

4

Forensic Sciences Branch at the Brooks Air Force Base drug
laboratory.  Plaintiff's counsel was not made aware of this
development before Williams' January 1998 administrative
discharge hearing.  On June 23, 2003, Williams filed a request
for reconsideration to the AFBCMR based on new evidence.  On
March 23, 2004, the AFBCMR denied plaintiff's petition.  Upon the
denial of reconsideration, the Court re-opened Williams' case.
He now moves for summary judgment on the basis that the decisions
of both the MSPB and the AFBCMR were arbitrary, capricious, in
bad faith, unsupported by substantial evidence, or contrary to
law, regulation, or mandatory published procedure of a
substantive nature.  Defendant opposes plaintiff's motion and
cross moves for summary judgment on the basis that the
administrative actions were not arbitrary, capricious, or
unsupported by substantial evidence.

## II.  LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate when there are no genuine
issues as to any material facts, and the moving party is entitled
to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c));
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court
must be satisfied that no reasonable trier of fact could find for

the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

**B.  AFBCMR Review Standard**

Final decisions made by the boards for correction of military records, such as the AFBCMR, are "subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also Hodges v. Calloway*, 499 F.2d 417, 422-23 (5th Cir. 1974).  Specifically, 5 U.S.C. § 706 of the Administrative Procedures Act governs the standard of review for AFBCMR decisions.  *See Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513-14 (D.C. Cir. 1989); *see also* 5 U.S.C. § 706(2) (The reviewing court shall set aside agency actions, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion . . . otherwise not in accordance with law" or "unsupported by substantial evidence . . . reviewed on the record of an agency hearing provided by statute.").  The Fifth Circuit has stated that "under this deferential standard, a court

6

reviewing an agency action may not substitute its own judgment for that of the agency." *La. Envtl. Action Network v. U.S. E.P.A.*, 382 F.3d 575, 582 (5th Cir. 2004).  Under 5 U.S.C. § 706, the court's review is limited to an examination of the administrative record before it.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  The reviewing court will find an agency action arbitrary or capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* (quoting *Tex. Oil & Gas Ass'n v. E.P.A.*, 161 F.3d 923, 934 (5th Cir. 1998).  Otherwise, "administrative action is upheld if the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made."  *Sierra Club v. Glickman*, 67 F.3d 90, 97 (5th Cir. 1995).

Furthermore, courts accord a higher level of deference to decisions by boards for correction of military records than to decisions by other administrative agencies.  *Kreis*, 866 F.2d at 1514-15; *see also Viles v. Ball*, 872 F.2d 491, 495 (D.C. Cir. 1989) ("The standard for review of Board judgments is

exceptionally deferential."). In reviewing a military correction board's decision, courts must be mindful that "Congress has entrusted the primary duty of correcting military records to the correction boards." *Hoffman v. United States*, 16 Cl. Ct. 406, 408 (1989). Therefore, for a reviewing court to sustain a military board's decision, "[a]ll that is required is that the Board's decision 'minimally contain a rational connection between the facts found and the choice made.'" *Frizelle v. Slater*, 111 F.3d 172, 176-77 (D.C. Cir. 1997) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The reviewing court cannot substitute its judgment for that of the board. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). In challenging a military correction board's decision, the plaintiff bears the difficult burden of "establishing by 'cogent and clearly convincing evidence' that the decision was the result of a material legal error or injustice." *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (quoting *Muse v. United States*, 21 Cl. Ct. 592, 602 (1990)). Should the Court decide that the AFBCMR decision cannot be sustained on the administrative record, the case should be remanded to the agency for further consideration. *Bowles v. U.S. Army Corps of Engineers*, 841 F.2d 112, 116 (5th Cir. 1988).

8

C.   **MSPB Review Standard**

Because this Court determined that plaintiff brought a mixed case appeal in which his discrimination claim was not merely a sham, the Court found that it had jurisdiction to review plaintiff's remaining non-discrimination claims on appeal from the MSPB's decision. *See Williams v. Roche*, 2002 WL 1585568 (E.D. La. July 16, 2002). As such, 5 U.S.C. § 7703(c) sets forth the standard of review for MSPB decisions. Under that provision, the district court shall affirm the decision of the MSPB unless it is found to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c)(1)-(3); *see also Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001). Substantial is defined as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion even though other reasonable persons might disagree. This is a lower standard of proof than preponderance of the evidence." 5 C.F.R. § 1201.56(c)(1). The Court reviews plaintiff's claims here based solely on the administrative record. *Aldrup*, 274 F.3d at 287.

**III. DISCUSSION**

Williams challenges the AFBCMR and MSPB decisions on several different grounds.  The Court addresses the AFBCMR and MSPB records separately below.

    **A.    AFBCMR Decisions**

Based on the two AFBCMR administrative records in this case, Williams asks the Court to set aside the AFBCMR's decisions under the APA's "arbitrary or capricious" standard.  The first administrative record, filed with the Court in 2002, encompasses Williams' appeal of his discharge board proceedings to the AFBCMR.  The second administrative record, filed with the Court in 2005, arises from the AFBCMR's denial of Williams' request for reconsideration based on new evidence.  Williams challenges his AFBCMR proceedings for the following reasons: (1) he received ineffective assistance of counsel at his administrative discharge board; (2) his urinalysis sample was subject to an improper chain of custody; (3) the administrative discharge board and the AFBCMR failed to consider his potential for rehabilitation; (4) the administrative discharge board and the AFBCMR failed to consider to the Secretary of Defense's retention factors; and (5) he was denied his Fifth Amendment right to due process by the administrative discharge board proceedings and the subsequent failure of the AFBCMR to correct the board's alleged errors.  The

Court examines each of Williams' arguments in turn.

       1.   *Ineffective Assistance of Counsel*

Williams first argues that his counsel at the administrative discharge hearing was ineffective.  As an initial matter, the Court must determine whether the Sixth Amendment right to effective assistance of counsel attaches to a party in an administrative discharge hearing.  The Fifth Circuit has stated that the Sixth Amendment right to counsel, and its attendant right to effective counsel, is limited to criminal proceedings. *Mantell v. Dept. of Justice, I.N.S.*, 798 F.2d 124, 127 (5th Cir. 1986).  While the right to effective counsel undoubtedly applies to *criminal* military proceedings, *see United States v. Ingham*, 42 M.J. 218, 223 (C.A.A.F. 1995), the Court cannot find, and the plaintiff fails to cite, any authority for the proposition that military members facing an administrative discharge board are guaranteed the right to effective assistance of counsel under the Sixth Amendment.[1]  The advisory opinion of Lt. Col. Christopher

---

[1] In his opposition to defendant's cross-motion for summary judgment, Williams points the Court to *Strickland v. United States*, 69 Fed. Cl. 684 (2006), as determining that the right to effective counsel attaches to administrative separation boards. The court there, however, stated only that the plaintiff in an administrative discharge hearing has a right to be represented by an attorney qualified under Article 27(b) of the Uniform Code of Military Justice.  *See id.* at 691, n.6.  It is silent as to any guarantees beyond the right to be represented by competent counsel, a right that Williams does not challenge in this motion.

Clark, which was adopted by the AFBCMR, found no such guaranteed right in this context.  (2002 AFBCMR A.R., at 196-97).

Even if Williams enjoyed a right to the effective assistance of counsel, his claim that he was denied effective assistance is wholly without merit.  To establish such a claim, a plaintiff must show both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984).  Military courts follow the standard set forth in *Strickland* to assess the effectiveness of military counsel in criminal proceedings.  *See, e.g., United States v. Sanders*, 37 M.J. 116, 118 (C.M.A. 1993).  The plaintiff must meet both prongs of the *Strickland* test and, if the Court finds that plaintiff has made an insufficient showing as to either prong, the Court may dispose of the claim without addressing the other prong.  *Strickland*, 466 U.S. at 697.  The Fifth Circuit has held that trial counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy."  *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).  A district court should not "find inadequate representation merely because, with the benefit of hindsight," the court disagrees with trial counsel's strategic

12

choices.  *Id.*  The Fifth Circuit has made it clear that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeated the entire trial with obvious unfairness."  *Id.* (citing *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). With these principles in mind, the Court considers plaintiff's allegations that he was denied effective assistance of counsel.

Combining the arguments made in plaintiff's summary judgment motion and his opposition to defendant's cross-motion for summary judgment, it appears that plaintiff's ineffective assistance of counsel claim is based on the following alleged deficiencies in the representation he received from his counsel: presenting only the "good soldier" defense; failing to argue that the chain of custody of plaintiff's urine sample was improper; failing to remind the discharge board to consider rehabilitation and retention factors; recommending that Williams provide only an unsworn statement; informing Williams that he could leave while the board proceedings were still ongoing; failing to conduct a proper investigation; and failing to ensure that Williams was aware of all eventualities.  As an initial matter, Captain Brynn P. Morgan of the United States Air Force represented Williams at

his administrative discharge hearing.  Williams has not alleged
that Morgan was unqualified to serve as his counsel at this
hearing.

Williams raised each of these alleged deficiencies in his
April 2000 petition to correct his record with the AFBCMR.  The
advisory opinion of Lt. Col. Clark addressed each deficiency and
concluded that Williams had not been denied effective assistance
of counsel at his administrative discharge hearing.[2]  (2002
AFBCMR A.R., at 195-98).  Specifically, Clark found that use of
the "good soldier" defense was "sound strategy, as evidence of
such may, by itself, cause the Government not to meet its burden
of proof."  (*Id.* at 197) (citing *United States v. Court*, 24 M.J.
11, 13-15 (C.M.A. 1987); *United States v. Vandelinder*, 20 M.J.
41, 45 (C.M.A. 1985)).  Clark also found that Morgan's decision
that Williams make an unsworn statement because Morgan believed
that Williams would not fare well under cross-examination was a
tactical decision that "should not be second-guessed."  (2002
AFBCMR A.R., at 197) (citing *United States v. Rivas*, 3 M.J. 282,
289 (C.M.A. 1977).  Williams contended that Morgan's decision

_____

[2] Clark addressed Williams' claims as to the chain of
custody and the rehabilitation and retention factors separately
from the other ineffective assistance of counsel allegations
because resolution of those issues necessarily involved a
determination of their underlying merits.  The Court likewise
will address those issues in separate sections.

resulted in an instruction, without objection, that called attention to the fact that Williams was not cross-examined and did not provide his statement under oath.  However, the record shows that the Legal Advisor instructed the board: "You will not draw any adverse inferences from the fact that the respondent did not elect to testify under oath as a witness."  (2002 AFBCMR A.R., at 184).[3]  Clark next found that Williams' allegation that Morgan improperly allowed him to leave the discharge hearing to attend an unrelated meeting in a different location was without merit.  Clark noted that Williams was present for the entirety of his own case-in-chief.  (*Id.* at 197).  The Legal Advisor also twice instructed the board that Williams' absence could not be held against him.  (*Id.*).  Moreover, Williams could have stayed for the entirety of the hearing, but left voluntarily.  (*Id.*).  Finally, Williams provided no additional factual allegations to support his general claims that Morgan failed to conduct a proper

---

[3] In his motion for summary judgment, Williams argues that this case is similar to *United States v. Forbes*, 61 M.J. 354 (C.A.A.F. 2005).  There, defense counsel objected to the military judge's use of the standard "failure to testify" instruction, but the military judge nevertheless presented the instruction, without articulating any "interests of justice" as required under Mil. Rule of Evid. 301(g).  *Id.*  Here, defense counsel did not object to this instruction.  The *Forbes* court stated that "Rule 301(g) recognizes that the decision to ask for a cautionary instruction is one of great tactical importance for the defense and generally leaves that decision solely within the hands of the defense."  *Id.* at 356.

investigation and failed to ensure that Williams was aware of all
eventualities.

Applying the *Strickland* standard for determining effective
assistance of counsel, Clark concluded that the performance of
Williams' counsel did not fall below an objective standard of
reasonableness because there was a sufficient explanation for
each of Morgan's challenged actions.  (*Id.* at 197).  Clark
therefore did not address the second prong of *Strickland*.  On
January 31, 2001, the AFBCMR essentially adopted Clark's advisory
opinion and concluded that there was no evidence of probable
material error or injustice.  It thus denied Williams' request to
set aside the determination of the administrative discharge
board.  (*Id.* at 3-5).  Because the AFBCMR assumed in Williams'
favor that the right to effective assistance of counsel attached
and then applied the correct *Strickland* standard, the Court does
not find that its decision in this regard was arbitrary or
capricious.  Williams has not pointed to any clearly convincing
evidence as to his representation by counsel that should
undermine the high level of deference accorded the decisions of
military correction boards.

   2.  *Improper Chain of Custody*

Williams challenges, both on the merits and through his
ineffective assistance of counsel claim, the correction board's

16

determination that evidence of Williams' urinalysis results was admissible at his discharge hearing.  Williams asserts that the government failed to prove that a valid chain of custody as to his urinalysis sample was maintained at all relevant times. Specifically, Williams points to a gap in the DD Form 2624 from January 12, 1997 to January 16, 1997 during the transfer of his urine sample.  (*Id.* at 39).  He further contends that fungible evidence, such as urine, is admissible only if the government can show a continuous chain of custody.  *See United States v. Nault*, 4 M.J. 318, 319 (C.M.A. 1978).  He argues that the evidence is not reliable enough to be relevant, alternatively, he argues that even if the evidence were relevant, its relevance is too weak to be considered material or its admission is too prejudicial. Williams therefore seeks to have evidence from his urinalysis test results ruled inadmissible, and thus the decision of the administrative discharge board set aside.

Williams initially raised this argument in his petition to the AFBCMR.  In an advisory opinion, which was adopted by the AFBCMR, Lt. Col. Clark stated that under Air Force Instruction 51-602, para. 2.1, which applies to military discharge board hearings, all matters that are relevant and material to an issue are admissible.  (2002 AFBCMR A.R., at 198).  According to Clark, evidence that might not be admissible at a court-martial can be

admissible at a discharge board hearing.  (*Id.*).  Therefore, he
concluded that even if a technical break in the chain of custody
did occur to the extent alleged by Williams, it would only affect
the weight accorded the evidence, not its admissibility.  (*Id.*)
(citing *United States v. Pollard*, 27 M.J. 376, 377 (C.M.A.
1989)).  As such, he found that the urinalysis evidence was
admissible, irrespective of the validity of Williams' challenge
to the chain of custody.

This conclusion appears to be reasonable.  As the *Pollard*
court stated, "deviating from a regulation or instruction which
sets out procedures for collecting, transmitting, or testing
urine samples does not render a sample inadmissible as a matter
of law." *Pollard*, 27 M.J. at 377.  In a similar case involving a
challenge to a military correction board's reliance on urinalysis
evidence with alleged chain of custody problems, the United
States Court of Federal Claims stated that "[t]he test is whether
the finder of fact 'can reasonably decide whether a urine sample
originated from [plaintiff] and was tested without adulteration
by any intervening agent or cause.'" *Petway v. United States*, 28
Fed. Cl. 711, 715 (1993) (quoting *Pollard*, 27 M.J. at 377).
Here, the DD Form 2624 clearly indicates that when the Air Force
Drug Laboratory received Williams' urine sample on January 16,
1997, the seal was not broken.  (2002 AFBCMR A.R., at 73).

18

Whatever chain of custody gap may have occurred between January 12, when the urine sample was sealed and prepared for shipment to the drug laboratory, and January 16, when the laboratory received the shipment, Williams provides no evidence that this potential break resulted in any tampering with the sample.  It was therefore not arbitrary or capricious for the AFBCMR to find that Williams' urine sample was reliable, and accordingly admissible at the discharge hearing.  Furthermore, as Williams' argument fails on the merits, his ineffective assistance of counsel claim on this issue cannot succeed.

  *3. Failure to Consider Potential for Rehabilitation*

  Williams alleges the discharge board failed to consider his potential for rehabilitation.  Specifically, Williams contends that 32 C.F.R. Part 41 App. A Part 2 § (A) mandated that the discharge board consider his potential for rehabilitation.[4] Williams also asserts that his counsel's failure to remind the

---

  [4] 32 C.F.R. Part 41 App. A Part 2 § (A)(2)(b) states that

> unless separation is mandatory, the potential for rehabilitation and further useful service shall be considered by the Separation Authority and, where applicable, the Administrative Board.  If separation is warranted despite the potential for rehabilitation, consideration should be given to suspension of the separation, if authorized.

(2002 AFBCMR A.R., at 200).

discharge board to consider rehabilitation constituted
ineffective assistance of counsel.  This exact issue was raised
on appeal to the AFBCMR.  Lt. Col. Clark, in his advisory opinion
to the AFBCMR, concluded that the discharge board's actions were
proper under Air Force Instruction 36-3209, which states at
paragraph 3.25.1 that military members discharged for drug abuse
are not eligible for the Air Force's Probation and Rehabilitation
program.  Furthermore, Clark found that, although Williams was
not eligible for the Probation and Rehabilitation program, the
discharge board did consider specific retention factors that
incorporated the potential for rehabilitation and further useful
service, as discussed in the next section.  (2002 AFBCMR A.R., at
201).  The AFBCMR adopted Clark's opinion as its own.  Williams
fails to offer any new authority or evidence that shows the
AFBCMR's decision should be reversed.  Thus, the Court finds that
the AFBCMR's determination of this issue was not arbitrary or
capricious.  Additionally, Williams' ineffective assistance of
counsel claim is rendered moot by the failure of the underlying
claim.

    *4.  Failure to Consider Retention Factors*

    Williams next alleges the discharge board failed to consider
retention criteria promulgated by 32 C.F.R. Part 41 App. A Part 2

20

§ (A)(2)(d).[5]  Williams also asserts that his counsel's failure
to remind the discharge board to consider these retention
criteria constituted ineffective assistance of counsel.  Once
again, this exact issue was raised on appeal to the AFBCMR.  In
his advisory opinion to the AFBCMR, Lt. Col. Clark found that the
discharge board properly considered retention criteria as
required by paragraph 4.14.4, which are similar to the criteria
set forth in 32 C.F.R. Part 41 App. A Part 2 § (A)(2)(d) and are
applicable to Air Force reserve members.[6]  (*Id.* at 202-03)

---

[5] The criteria are:

(1) The seriousness of the circumstances forming the
basis for initiation of separation proceedings, and
the effect of the member's continued retention on
military discipline, good order, and morale.
(2) The likelihood of continuation or recurrence of
the circumstances forming the basis for initiation of
separation proceedings.
(3) The likelihood that the member will be a
disruptive or undesirable influence in present or
future duty assignments.
(4) The ability of the member to perform duties
effectively in the present and in the future,
including potential for advancement or leadership.
(5) The member's rehabilitative potential.
(6) The member's entire military record.

[6] Air Force Instruction 36-3209, paragraph 4.14.4, states
that a member found to have abused drugs will be discharged
unless the member meets all seven of the following criteria:

(1) Drug abuse is a departure from the member's usual
and customary behavior; and
(2) Drug abuse occurred as a result of drug
experimentation; and

(citing *id.* at 125).  Williams was required to prove the satisfaction of each criterion by a preponderance of the evidence in order to not be discharged.  (*Id.* at 203).  However, Clark determined that, because Williams denied using cocaine, he did not present any evidence to satisfy the retention criteria.  For the discharge board to consider any of the retention factors, the military member first must admit to drug abuse.  (2002 AFBCMR A.R., at 202).  The AFBCMR adopted Clark's opinion as its own. Williams fails to offer any new authority or evidence that shows the AFBCMR's decision should be reversed.  Thus, the Court finds that the AFBCMR's determination of this issue was not arbitrary or capricious.  Additionally, Williams' ineffective assistance of counsel claim is rendered moot by the failure of the underlying claim.

     5.   *Denial of Due Process Rights*

    Finally, Williams contends that the AFBCMR's actions

---

      (3) Drug abuse does not involve recurring incidents,
other than drug experimentation; and
      (4) The member does not desire to engage in or intend
to engage in drug abuse in the future; and
      (5) Drug abuse under all circumstances is not likely
to recur; and
      (6) Under the particular circumstances of the case,
the member's continued presence in the Air Force
Reserve is consistent with the interest of the Air
Force in maintaining proper discipline, good order,
leadership, and morale; and
      (7) Drug abuse did not involve drug distribution.

constituted a violation of his due process rights under the Fifth
Amendment.  Williams initially raised this claim on appeal to the
AFBCMR before its 2001 decision that upheld the discharge board's
finding that he had used drugs and should be discharged.  The
AFBCMR found that Williams did not allege any specific violations
of his due process rights, beyond the issues that have already
been discussed, and thus it found no material error or injustice.
The AFBCMR's determination of this issue was not arbitrary or
capricious.

Williams, however, now asserts that the AFBCMR's 2004
decision that denied his request for reconsideration based on new
evidence resulted in a denial of his due process rights.
Specifically, Williams points to a letter from Lt. Col. James A.
Swaby that was included in the 2002 Administrative Record filed
with this Court, but not previously disclosed to Williams or his
counsel.  The letter stated that Dr. Vincent Papa, who was the
chief of the forensic sciences branch at the Brooks Air Force
Base drug laboratory during the time that Williams' urinalysis
had tested positive for cocaine, had been removed from his
position for engaging in poor forensics practice in the lab's
reporting of an administrative false positive report in an
unrelated case.  (2005 AFBCMR A.R., at 14).  The letter was
addressed to "trial or defense counsel" and was dated October 15,

23

1997, more than three months before Williams' discharge board proceedings.  Dr. Papa, who worked at the lab where Williams' sample was tested but did not conduct the urinalysis himself, testified as an expert witness at the discharge board proceedings.  (2002 AFBCMR A.R., at 58).  In his testimony, Dr. Papa legitimized the urinalysis process and test results.  (*Id*.).

Williams argues that the government's failure to disclose this letter to either him or his counsel compromised his ability to cross-examine Dr. Papa at trial and to question the lab's ability to properly test urine.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  Williams does not present, and the Court does not find, any authority to support the proposition that the principles set forth in *Brady*, which apply to criminal matters, have been extended to administrative hearings such as this one.  Rather, courts have held that, in the military context, "administrative discharge hearings are not criminal procedures, and therefore, do not give rise to the *Brady* rule requirements of disclosure."  *Weaver v. United States*, 46 Fed. Cl. 69, 78 (2000); *see also Garrett v. Lehman*, 751 F.2d 997,

24

1002-03 (9th Cir. 1985) ("Administrative discharge proceedings are . . . prospective.  The function of such proceedings is to determine eligibility for further military service; not to punish for past wrongs.").

The AFBCMR, finding *Brady* inapplicable to an administrative discharge board proceeding, determined that Williams' due process rights were not violated by the unintentional withholding of the Dr. Papa letter because the failure to disclose this evidence did not establish the existence of probable material error or injustice.  (AFBCMR 2005 A.R., at 10).  The chief of the administrative law division of the Air Force Judge Advocate General, whose recommendation was adopted by the AFBCMR, based this decision on several factors.  First, he noted that an in-depth review of the drug testing laboratory process and procedures at the Brooks Air Force Base in the aftermath of the false positive test had been conducted covering all 2,239 positive specimen records during the time period of October 1994 through December 1997.  (*Id*. at 454).  The review concluded: "There were no errors in specimen identification or results reported in the records reviewed.  The error in reporting that occurred last May was an isolated event and is in no way reflective of the quality of work conducted at the Drug Testing Division, Armstrong Laboratory, Brooks AFB."  (*Id.* at 454-55).

25

The chief of the administrative law division of the Air Force
Judge Advocate General also stated that after the false positive
test Dr. Papa testified as a forensic toxicology expert in over
200 proceedings, thus the finding that Dr. Papa was a poor
supervisor and/or administrator "did not impugn his forensic
toxicology expertise." (*Id.* at 5, 7-8).  Furthermore, he found
that since 1998 the drug laboratory has been inspected more than
17 times and "no notable forensic practice discrepancies have
been reported." (*Id.* at 5).  Consequently, he concluded that

> despite his failure to provide adequate laboratory
> administrative oversight, Dr. Papa's professional
> qualifications, particularly as an expert witness, are
> beyond reproach; and there is no question or meritorious
> challenge to the Air Force Drug Laboratory's chain of
> custody or quality control process and procedures.

(*Id.*).  Second, he noted that the theory of Williams' case was
innocent ingestion with the "good soldier" defense.  (*Id.*).  Lt.
Col. Swaby's letter would not have assisted Williams in proving
either of these defenses.  At the hearing, Williams failed to
raise any challenge to the integrity of the urinalysis chain of
custody or the laboratory's urine testing procedures.[7]  (*Id.*).
Therefore, he concluded that the failure to provide the non-
exculpatory memorandum was not prejudicial in that it did not

---

[7] Williams first challenged the chain of custody of his
urine sample after the completion of his administrative discharge
hearing.

constitute material error or injustice.  (*Id.* at 5, 7-8).

The gravamen of Williams' petition for reconsideration to the AFBCMR and in the instant summary judgment motion is that once an error in the administrative proceedings has occurred, a violation of due process rights has taken place and the AFBCMR must correct Williams' record.  He relies on *Kindred v. United States*, 41 Fed. Cl. 106 (1998); and *Sanders v. United States*, 219 Ct. Cl. 285 (1979) (en banc).  However, in both of those cases, the error in the administrative proceeding was considered prejudicial, yet still not corrected by the military corrections board.  *Kindred*, 41 Fed. Cl. at 121 ("[T]he BCNR failed to recognize that a prejudicial, procedural error had occurred."); *Sanders*, 594 F.2d at 818-19 ("Earlier in this opinion we have said that it takes more than harmless error or simple injustice to win judicial relief.  But, the errors in this case as put before us are not innocuous.").  Here, the AFBCMR, after evaluating both the Judge Advocate General's recommendation and Williams' objections, concluded that the failure to disclose Lt. Col. Swaby's letter was not prejudicial to Williams at his administrative discharge hearing.  (2005 AFBCMR A.R., at 9-10).

This Court also finds that the absence of the letter did not constitute material error or injustice.  First, the letter describes a single unrelated incident of a false positive test

that was established to be an outlier when compared with more than two thousand other urine samples from the same time period. While the existence of the letter had the potential to have some impact on the credibility evaluation of Dr. Papa, it would not have been enough under the totality of the circumstances to make the withholding of the document prejudicial given the isolated nature of the false positive test and the fact that Dr. Papa was held responsible solely in an administrative oversight capacity, not for any direct involvement.  Second, the information that Williams now relies on to challenge the chain of custody of his sample, namely DD Form 2624, was available to him at his administrative discharge hearing, and he failed to use it then. Lt. Col. Swaby's letter, to the extent it might be relevant to the chain of custody issue, only discusses procedures at the laboratory.  Williams, however, asserts that a break in the chain of custody occurred before the sample arrived at the laboratory. Additionally, as discussed earlier, the military and this Court both agree that there was no prejudicial defect in the chain of custody.

Furthermore, Williams' reliance on *United States v. Mahoney*, 58 M.J. 346 (C.A.A.F. 2003), is misplaced.  There, the court found that the failure to disclose a letter critical of the performance of the government's drug expert constituted a

28

violation of due process under the Fifth Amendment.  58 M.J. at
349-50.  The *Mahoney* decision, however, is distinguishable from
the case at hand.  First, it was a criminal proceeding, which, as
discussed above, implicates the due process principles set forth
in *Brady.*  Second, the letter in *Mahoney* contained information
that directly undermined the expert's credibility as an expert on
the government's drug testing procedures.  *See id.*  The expert,
who testified in the same capacity as Dr. Papa did in this
matter, had previously provided testimony in another matter that
was critical of studies normally relied upon by Air Force drug
testing experts in their testimony.  *Id.* at 349-50.  The *Mahoney*
letter questioned the doctor's continued employment in light of
his criticisms of the Air Force program.  *Id.*  The court in
*Mahoney* found that "[t]his admonition arguably created a
significant motive – the desire to receive favorable work
evaluations and keep his job – for Dr. Mobley to testify
positively about lab procedures and underlying scientific studies
in future courts-martial."  *Id.* at 350.  This motivation could
have been revealed on cross-examination if the defendant
possessed the letter.  *Id.*  Here, Lt. Col. Swaby's letter, as
discussed earlier, does not contain information that calls into
question Dr. Papa's motivation or credibility as a forensics
expert.  Furthermore, the theory of the defense in *Mahoney* was to

29

attack the legitimacy of the drug test results, a defense that the court there found would have been aided by potential impeachment evidence against the government's drug testing expert. *Id.* at 349-50.  Here, Lt. Col. Swaby's letter pointed to a single incident of a false positive in an unrelated proceeding and did not challenge the procedures used in Williams' case.  Nor was the defense's theory that the underlying drug test results were illegitimate.

Having reviewed the record and the decision of the AFBCMR denying Williams' request for reconsideration based on the disclosure of Lt. Col. Swaby's letter, the Court finds that the AFBCMR's decision was not arbitrary or capricious.  It was based on substantial evidence and contains a rational connection between the facts found and the choice made.  As such, given the substantial degree of deference accorded military correction boards, the Court upholds the AFBCMR's determination that Williams was not denied his due process rights.

**B.   MSPB Decision**

Williams also seeks judicial review of the actions of the MSPB under 5 U.S.C. § 7703.  Specifically, Williams challenges the MSPB's use of the collateral estoppel doctrine to prevent relitigation of whether Williams used cocaine.  Additionally, Williams asserts that the MSPB failed to consider the possibility

30

that he innocently ingested the cocaine, that the MSPB erred when it did not find that the adverse action taken against him was in retaliation for a previous complaint, and that removal was an improper punishment.  Williams also contends that he was denied his due process rights under the Fifth Amendment.  The Court examines each of Williams' arguments in turn.

   1.  *Use of Collateral Estoppel*

   A government agency such as the Department of the Air Force may remove an employee in Williams' civilian position "for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a).  To demonstrate that removal of an employee for disciplinary reasons is for the efficiency of the service, an agency must prove, by a preponderance of the evidence, that the charged conduct occurred.  5 U.S.C. § 7701(c)(1)(B); *see also Pope v. United States Postal Serv.*, 114 F.3d 1144, 1147 (Fed. Cir. 1997).  Here, the administrative law judge assigned to Williams' case invoked the doctrine of collateral estoppel to find that Williams did wrongfully use cocaine based on the military discharge board's previous litigation of the issue.  (MSPB A.R., at 290).  The administrative law judge affirmed his decision after a motion for reconsideration.  (*Id.* at 304).  The full MSPB then affirmed the decision.  (*Id.* at 347).

   Williams contends that the MSPB committed error by using the

31

military discharge board's decision as the basis for finding that the charged conduct occurred.  Williams asserts that the use of the collateral estoppel doctrine was improper because the discharge board's determination was not a final judgment on the merits, the discharge board's transcript upon which the MSPB relied is inadequate to support the use of the collateral estoppel doctrine, and Williams sought to collaterally attack the findings of the discharge board.  Williams raised each of these arguments before the administrative law judge.  (*Id.* at 309).  Nevertheless, the administrative law judge, in a decision affirmed by the MSPB, concluded that the agency had shown that collateral estoppel is applicable to the issue of whether Williams used cocaine.  (*Id.* at 324).

The Court finds that this decision was not arbitrary, capricious, or otherwise not in accordance with the law.  The MSPB's decision that the issue of whether Williams used cocaine should not be relitigated because of the discharge board's earlier determination of the issue was proper.  The elements of collateral estoppel were clearly satisfied, namely, that (1) the issues in both proceedings are identical; (2) the issue was actually litigated; and (3) the determination of the issue in the prior litigation was crucial to the judgment in the earlier action.  *See Matter of Lewisville Properties, Inc.*, 849 F.2d 946,

32

949 (5th Cir. 1988).   In both proceedings, the same issue of
whether Williams used cocaine was crucial to the outcome, and the
same preponderance of the evidence standard applied, thus
satisfying the first and third elements.   As for the second
element, Williams already had his opportunity to fully and fairly
litigate the drug use issue at the discharge board hearing.   As
this Court has determined, his counsel was not ineffective during
the discharge board proceedings.   Therefore, the Court upholds
the MSPB's use of collateral estoppel.

> ### 2.   *Failure to Consider Innocent Ingestion*

The MSPB administrative law judge concluded that the agency
had proven its charge against Williams because it showed by a
preponderance of the evidence that Williams used cocaine and that
cocaine is an illegal drug.   (MSPB A.R., at 324).   Williams
argues that the administrative law judge erred by failing to
consider that Williams may have innocently ingested the cocaine
he was found to have used.   Williams asserts that military
guidelines require that he knew he was using the cocaine in order
to prove the charge.   This argument confuses the issues before
the AFBCMR and the MSPB.   Here, Williams was charged with illegal
use of drugs.   (*Id.* at 23).   The administrative law judge
concluded that the agency did not have to show "knowing" or
"intentional" use, and Williams points to no language in any

applicable agency regulation for the proposition that "knowing" or "intentional" use is a prerequisite for the charge against him.  Without any showing that there was a legal requirement that the MSPB had the burden to show that Williams knowingly or intentionally used cocaine, the Court does not find that the MSPB's decision as to the elements of the charged conduct against Williams was arbitrary or capricious.

### 3.   Failure to Find Retaliation

At his MSPB hearing, Williams alleged that the agency removed him in retaliation for discrimination complaints he had filed against his superiors.  (*Id.* at 324).  Based on testimony at the hearing, the administrative law judge concluded after an extensive analysis that Williams had not met his burden of showing under *Warren v. Dep't of Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986), that there was a genuine nexus between the alleged retaliation and the adverse action.  (MSPB A.R., at 324-28).  The administrative law judge's decision was based in part on his evaluation of the credibility of the witnesses.  (*Id.* at 327). Williams now challenges the administrative law judge's credibility determinations.  Courts have consistently held that such determinations are "virtually unreviewable." *See, e.g., Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002); *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).

The Court therefore upholds the administrative law judge's analysis, as it is not arbitrary or capricious and it is supported by substantial evidence.

### 4.   *Improper Punishment*

Williams next contends that the penalty of removal was unreasonable and in violation of a governing directive.  The administrative law judge found that the record reflected the agency's consideration of the factors it is required to weigh when determining a penalty under *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305-06 (M.S.P.B. 1981).  (*See* MSPB A.R., at 331). The administrative law judge also found that removal had been upheld in previous cases as an appropriate penalty for a single use of cocaine by an Air Force employee.  (*Id.*).  He further held that all relevant mitigating factors were considered in this case.  (*Id.*).  Thus, the administrative law judge concluded that, considering the record as a whole, the penalty of removal was within the limits of reasonableness and promoted the efficiency of the service.  (*Id.* at 332).

When reviewing the MSPB's determination of the penalty imposed, courts defer to the agency's decision "unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to

35

an abuse of discretion.'" *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987).  This is because "[i]t is well-established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency." *Id.*  Furthermore, it is well settled that an employee can be removed by the MSPB for off-duty use of illegal drugs. *See Rice v. Dep't of Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993).  Williams in fact concedes that removal was authorized as a potential punishment for drug use by an Air Force employee. Therefore, the Court finds that the MSPB's decision to affirm Williams' removal for drug use was not an abuse of discretion and was supported by substantial evidence.

     *5.  Denial of Due Process Rights*

    Lastly, Williams argues that he was denied his due process rights under the Fifth Amendment because the agency official that decided to remove Williams testified at the administrative hearing that he based his decision on the discharge board's recommendation of separation.  Williams contends that the reason provided for his removal on the Notice of Proposed Action was illegal use of drugs.  Williams therefore alleges that it was impermissible, and a violation of due process, for this issue to be raised for the first time at the administrative hearing.  The

administrative law judge found that any suggestion that the agency official asserted a new basis for Williams' removal at the hearing was immaterial because the agency actually used the original charge of illegal drug use to remove Williams and, moreover, that was the basis on which the administrative law judge adjudicated Williams' appeal.  (MSPB A.R., at 331). Williams presents no new evidence or authority to show that this decision was arbitrary or capricious.  Furthermore, Williams' summary judgment motion does not contain any other basis for his assertion that his due process rights were violated during the MSPB proceedings.  Accordingly, the Court affirms the decision of the MSPB as to Williams' due process claim.

## IV. CONCLUSION

     For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.

     New Orleans, Louisiana, this __8th__ day of January, 2007.

                    _Sarah Vance_
                    SARAH S. VANCE
              UNITED STATES DISTRICT COURT